IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Maria Villa-Cortez, Xochitl Vargas, and Agustina Trujillo-Villegas individually and on behalf of other employees similarly situated, Plaintiffs<br>v.<br>Altak, Inc. and Miko Kabeshita, individually, Defendants | Case No. 1:15-cv-00725<br>Judge: Hon. Robert M. Dow, Jr.<br>Magistrate: Hon. Sheila Finnegan |

**MEMORANDUM IN SUPPORT OF THE PLAINTIFFS' UNOPPOSED
MOTION FOR PRELIMINARY APPROVAL OF PROPOSED
<u>SETTLEMENT AND FOR CLASS CERTIFICATION</u>**

**I.    Introduction**

Named Plaintiffs Maria Villa-Cortez, Xochitl Vargas, and Agustina Trujillo-Villegas ("Named Plaintiffs" or "Class Representatives") filed this action on behalf of themselves and all other persons similarly situated, alleging that Defendants Altak, Inc. and Miko Kabeshita failed to pay certain employees minimum wages and overtime wages in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq.*, and the Illinois Minimum Wage Law ("IMWL"), 810 ILCS §105/1 *et seq.*

The Settlement was reached only after the Parties exchanged discovery, including large amounts of electronic records, after Plaintiffs' counsel prepared a comprehensive damage model, and after the Parties engaged in several months of arms-length settlement negotiations. The Settlement is fair and a reasonable resolution of a bona fide dispute that provides substantial relief to Class Members and eliminates the risks both sides would face if this lawsuit continued on the merits. The Parties request that this Court: (1) preliminarily approve the Parties' Joint Stipulation and Agreement to Settle Class Action Claims (the "Agreement") (to be reviewed in camera); certify two classes for settlement purposes as provided in the Agreement; approve the

Class Action Notice attached as Exhibit A to the Agreement; and schedule a Fairness Hearing for final approval. Plaintiffs will send a joint proposed order to the Court's proposed-order mailbox.

## II. Facts

### a. Procedural Background

On January 24, 2015, Maria Villa-Cortez filed this action in the United States District Court for the Northern District of Illinois, Eastern Division, on behalf of herself and others similarly situated, alleging that Defendants violated the FLSA and the IMWL. She alleged Defendants violated the FLSA and IMWL by paying employees less than minimum wage and by failing to pay premium compensation at a rate not less than one and one half times the regular rate at which they were employed for hours worked in excess of forty hours weekly. On March 3, 2015, a First Amended Complaint was filed to add Xochitl Vargas and Agustina Trujillo-Villegas as Named Plaintiffs. On the same day, Plaintiffs also filed a Motion to Certify a Class Action. The Parties did not brief that motion, and it was entered and continued by this Court. Plaintiffs' Motion to Certify a Class Action was re-filed on March 25, 2016. The parties engaged in good-faith settlement discussions for several months, and in light of said good-faith settlement discussions, Defendants filed joint motions for extensions of time to continue Defendants' responsive pleading due date. Defendants have not filed any answer.

### b. The Parties Thoroughly Investigated the Case

On February 17, 2015, the Parties discussed the prospect for early settlement discussions on a class basis. Declaration of Valentin T. Narvaez ("Narvaez Decl. ¶7"), attached hereto as Exhibit B. Plaintiffs' counsel requested that Defendants produce records to assist settlement discussions. *Id.* On May 22, 2015, Defendants produced voluminous payroll summaries and production detail for approximately three hundred (300) persons ("homeworkers") who worked

for Defendants as independent contractors assembling vehicle parts from home for the years 2012, 2013, and 2014. Narvaez Decl. ¶8. Plaintiffs' counsel reviewed that information thoroughly. *Id.* On June 3, 2015, Defendants supplemented their production with a sampling of tickets that homeworkers completed, signed, and dated indicating the total number of pieces given to the homeworkers and number of pieces assembled by the homeworkers and returned to Defendants. *Id.* Plaintiffs' Counsel then prepared a damage model and issued a class-wide settlement demand on September 9, 2015. *Id.*

The parties continued settlement discussions and exchanged monetary demands and offers between September 2015 and February 2016. *Id.* On February 18, 2016 the parties agreed to a class-wide settlement amount of $363,000. *Id.* The Parties further negotiated the non-monetary terms of the Settlement and reached this agreement. *Id.* Described further below, the Settlement provides for a payment to all Class members who do not opt-out of the Settlement. *Id.* Class members do not need to submit claim forms to participate in the Settlement. *Id.*

### III. THE PROPOSED SETTLEMENT

#### a. The Proposed Settlement Class and Class Period

The Agreement describes the individual Class members. Narvaez Decl. ¶13. The class period is January 24, 2012 to the date of preliminary approval (the "Class Period). The Parties ask the Court to certify a class composed of:

> All persons who worked for Defendants in the job position of homeworker between and January 24, 2012 and the date of preliminary approval (the "Class").

#### b. Payments to Class Members

Each Class Member's share of the settlement will be calculated as set forth in Paragraph 8 of the Agreement. Paragraph 8 of the Agreement also explains the method for determining a Class Member's share of the settlement. For purposes of calculating settlement payments to

Class Members from the Settlement Fund, the estimated number of hours worked by and the compensation paid to each Class Member were determined from records Defendant produced to Plaintiffs' counsel. Each Class Member will receive a Notice document that will identify the approximate amount he or she will be paid from the Settlement Fund. Each Class Member will have an opportunity to object to or opt-out of the Settlement. The Agreement provides that Class Members do not need to submit a claim form to receive his or her share from the Settlement Fund. Class Members who do not exclude themselves from the settlement will not need to take any affirmative action to receive their pro rata share of the Settlement Fund. Paragraph 7 and 8 of the Agreement explain the settlement administration, timelines and process for distributing the settlement checks.

    c.    **Class Representative and Opt-In Plaintiff Service Awards**

As a result of a $363,000.00 settlement on behalf of the Class, the Named Plaintiffs are entitled to a modest service award. Narvaez Decl. ¶16. The Seventh Circuit stated in 1998 that: "[b]ecause a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). "Incentive awards 'are justified when necessary to induce individuals to become named representatives.'" *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (Nov. 23, 2015)(citing *In re Synthroid Marketing Litigation*, 264 F.3d 712, 722 (7th Cir. 2001). "When determining whether and how much to award as an incentive for a named plaintiff, courts are instructed to consider 'actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Id.* (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

In this case, the Named Plaintiffs stepped forward to initiate and maintain this action. They actively participated in the case and performed everything asked of them. *Id.* Each Named Plaintiff provided valuable documents and information to Plaintiffs' Counsel that assisted the recovery of wages on behalf of all Class Members. *Id.* Without the Named Plaintiffs' combined efforts, this case would not have been filed and this settlement would not have been achieved. *Id.* As a result of their combined efforts and the results achieved, service awards to these individuals are well justified. *See Dean v. Eclipse Advantage, Inc.*, Case No. 11-8285 (N.D. Ill.)(Dkt. #149, ¶12)($5,000 service award); *Kernats v. Comcast*, Case No. 09-3368 (N.D. Ill.)(Dkt. #115, ¶9) ($7,500 incentive awards to the named Plaintiffs); *Schmidt v. Smith & Wollensky LLC*, Case No. 09-2752 (N.D. Ill)(Dkt. #78, ¶5)($10,000 service award); *Romo v. Manpower Inc.*, Case No. 09-3429 (N.D. Ill.)(Dkt. #249, ¶7)($10,000 service awards); *Berger v. Xerox Corp. Ret. Income Guar. Plan*, 2004 WL 287902, at *3 (S.D. Ill. Jan. 22, 2004) ($20,000 incentive awards); *Beesley v. International Paper Company*, 2014 WL 375432, *4 (S.D. Ill, 2014)(one $15,000 incentive award and six $25,000 incentive awards).

The Agreement contemplates service awards to the Class Representatives to acknowledge their service to the Class. Each Named Plaintiff requests a reasonable Service Award of Ten Thousand Dollars ($10,000). Narvaez Decl. ¶16. These Service Awards are in addition to any payment that they receive as their share of the Settlement Fund. *Id.*

    d.    **Settlement Administration and Notice**

The Parties recommend Settlement Services, Inc. to perform the duties of Settlement Administrator. The proposed duties of the Settlement Administrator are set forth in Paragraph 5 of the Agreement and include:

1) Case Start-up, Data Handling and Initial Programming: The Class Member data will be sent to the Settlement Administrator via email or disk in Excel format and will include the name, last known address, and telephone number for each Class Member (to the extent that information is in Defendants' possession, custody or control). The Settlement Administrator will create a program to document and track all activity related to each Class Member, including mailings and undeliverable mail. The Settlement Administrator will also print and mail the Notice to each Class Member via U.S. first-class mail;

2) Returned Undeliverable Notices and Mail Received: Notices returned as undeliverable by the U.S. Postal Service will be date-stamped and recorded in the Settlement Administrator's database. Those with forwarding addresses will be re-mailed to the addresses provided. The Settlement Administrator will also process Opt-Outs, Objections, and Miscellaneous Mail;

3) Qualified Settlement Fund (QSF): The Settlement Administrator will establish the QSF through the IRS, obtain a unique Employer Identification Number for the QSF, and establish a bank account for the Fund. The Settlement Administrator will be responsible for computing and deducting any required withholdings and deductions, including the employer's share of payroll taxes. The Settlement Administrator will also be responsible for making all tax payments for the QSF, including employer payroll taxes, the electronic filing of the W-2 and 1099-Misc Tax Forms, the filing of the 1120SF tax returns for the Fund, and the filing of the Forms 941;

4) Mailing of Award Checks: The Settlement Administrator will design, print, and mail award checks to eligible Class Members; and

5) The Settlement Administrator will be responsible for printing and mailing the W-2 and 1099-MISC forms to award recipients and the processing of undeliverable award checks and tax forms.

Defendants have agreed to cooperate with the Settlement Administrator to ensure that it has all of the information needed to perform the tasks listed above. The cost of administering the Settlement is estimated to be $14,000.

### e. Attorneys' Fees and Costs

The Agreement provides that Plaintiff's Counsel will seek an award for attorneys' fees and costs before the Final Approval Hearing and such motion will be decided at the Final Approval Hearing. Under the Agreement, Class Counsel may seek attorneys' fees not to exceed one third of the Settlement Fund, and litigation expenses and/or costs shall not exceed $3,500.00. Defendants will not object to Class Counsel's fee and costs application within these limits.

## IV. THE COURT SHOULD PRELIMINARILY APPROVE AND PROVISIONALLY CERTIFY THE SETTLEMENT CLASS

### a. Settlement and Class Action Approval Process

The Parties request that the Court preliminarily approve the proposed Settlement. Federal courts favor class action settlement, particularly in complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996) ("Federal courts naturally favor the settlement of class action litigation."); *see also Armstrong v. Bd. of Sch. Dirs. of Milwaukee*, 616 F.2d 305, 313 (7th Cir.1980) (overruled on other grounds by *Felzen v. Andreas*, 134 F.3d 873 (7th Cir.1998)).

*Newberg on Class Actions* describes the process for class-action, settlement approval:

> First, the parties present a proposed settlement to the court for so-called "preliminary approval." If a class has not yet been certified, the parties will typically simultaneously ask the court to conditionally certify a settlement class.

> Second, if the court does preliminarily approve the settlement (and conditionally certify the class), notice is sent to the class describing the terms of the proposed settlement, class members are given an opportunity to object or, in Rule 23(b)(3) class actions, to opt out of the settlement, and the court holds a fairness hearing at which class members may appear and support or object to the settlement.
>
> Third, taking account of all the information learned during that process, the court decides whether or not to give "final approval" to the settlement. As the parties may also have moved for class certification at this point in the litigation, final approval can also encompass a decision certifying the class. Rule 23(e)(2) conditions final approval of any class action settlement on a judicial finding that the terms are "fair, adequate, and reasonable." This decision is left to the discretion of the trial court, but most circuits have created detailed multifactor test to guide the trial judge's decision.

*Newberg on Class Actions* § 13.1 (5th ed. 2014). This process safeguards the due process rights of absent class members and enables the Court to guard class interests. *Id.* The preliminary, pre-notification hearing is used "to determine whether the proposed settlement is 'within the range of possible approval.' This hearing is not a fairness hearing; its purpose, rather, is to ascertain whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 346 (N.D. Ill. Aug 11, 2010) (citing *Armstrong*, 616 F.2d at 314). "The district court must determine that a class action settlement is fair, adequate, and reasonable, and not a product of collusion." *Id.*, 270 F.R.D.at 346 (citing *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 279 (7th Cir.2002)). The court's primary objective at the first stage (preliminary approval) is to establish whether to direct notice of the proposed settlement to the class, invite the class' reaction, and schedule a final fairness hearing.

Courts will grant preliminary approval where the proposed settlement "is neither illegal nor collusive and is within the range of possible approval." *In re Vitamins Antitrust Litigation*, 1999-2 Trade Cas. (CCH) ¶ 72726, 1999 WL 1335318, *5 (D.D.C. 1999); *see also American*

*International Group, Inc. v. ACE INA Holdings, Inc.*, 2012 WL 651727, *2 (N.D. Ill. 2012), appeal dismissed, 710 F.3d 754 (7th Cir. 2013) (noting that the district court applies a five factor fair/reasonable/adequate test used on final review "provisionally" at preliminary approval stage, reserving "more searching" analysis for final approval); *Kessler v. American Resorts International's Holiday Network, Ltd.*, 2007 WL 4105204, *5 (N.D. Ill. 2007), adhered to on reconsideration, 2008 WL 687287 (N.D. Ill. 2008) (stating that preliminary approval turns on "a more summary version of the same inquiry" that determines whether a proposed settlement ought to be granted final approval).

### b. Relevant Factors for Preliminary Approval

The "general, longstanding guidance on the matter, namely, that when conducting a fairness determination relevant factors include: '(1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.'" *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014) (citing *Gautreaux v. Pierce*, 690 F.2d 616, 631 (7th Cir.1982)).

#### i. The Strength of Plaintiffs' Case Versus the Amount Offered in the Settlement

The Seventh Circuit has "deemed the first factor to be the most important: 'The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement.'" *Id.* at 864 (citing *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106, 1132 n. 44 (7th Cir.1979)). However, "district courts have been admonished 'to refrain from resolving the merits of the controversy or making a precise determination of the parties' respective legal rights.'" *EEOC v.*

*Hiram Walker & Sons, Inc.*, 768 F.2d 884, 889 (7th Cir. 1985). Accordingly, in deciding whether to approve the Settlement, this Court must focus on the "principles governing approval" of settlement, but "not upon the substantive legal issues." *See id.* at 890. The relief offered by settlement, when balanced against the uncertain status of the law as to Plaintiffs' claims and the probable complexity of any further litigation, provides fair, reasonable, and adequate relief if "there is no showing that the amounts received by the beneficiaries [are] totally inadequate" *Id.* at 891. "A settlement is fair to the plaintiffs . . . if it gives them the expected value of their claim if it went to trial, net of the costs of trial . . . ." *Mars Steel Corp. v. Continental Ill. Nat'l Bank & Trust*, 834 F.2d 677, 682 (7th Cir. 1987).

The proposed consideration to be paid by Defendant to the Class is considerable and the plan of allocation is reasonable. The Settlement Fund of approximately $363,000 represents approximately 55% of the value of wages owed to class members during the Class Period if the Named Plaintiffs prevailed on all of their claims and on a motion for class certification. Narvaez Decl. ¶17. Defendants vigorously contest liability and, if the litigation proceeded, Defendants would have opposed certification. *Id.* For example, homeworkers did not work on Altak's job site and were unsupervised. They were free to reject or accept an assignment and were paid varying piece rates depending on the number of pieces assembled and the rate that the homeworker negotiated with Altak. Many homeworkers also maintained other, primary jobs and performed work for Altak sporadically. Moreover, Defendants relied upon two decisions from the Illinois Department of Employment Security finding that Defendants properly classified homeworkers as independent contractors. Therefore, the settlement was discounted to account for the risk that Defendants would prevail on issues relating to liability and/or class certification. *Id.* The allocation of the Settlement Payment is favorable to Class Members. Class Members are not

required to submit a claim form to participate in the Settlement. Narvaez Decl. ¶12. Class Members will receive their share of the Settlement in accordance with the detailed formula provided in Paragraph 8 of the Settlement. This is an excellent result for Class Members.

### ii. Complexity, Length, and Expense of Further Litigation

The Court should consider the complexity, length, and expense of litigation spared by the proposed settlement. *In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1019 (N.D. Ill. 2000). Without settlement, Defendants would continue to vigorously defend the case. Further litigation would require the unnecessary burden of written discovery, depositions, discovery related motion practice, and dispositive motions. Plaintiffs and the Class Members may also encounter appellate work that would further drain the parties, their counsel, and the Court of resources. Additional, but avoidable, litigation would essentially inflate the burden, risks, and expenses rather than deflate the litigation risks and expenses for the Class. *See Isby*, 75 F.3d at 1199. The remaining burden, expenses, and risks for Plaintiffs and the Class Members would be substantial because continued litigation would require resolution of complex issues.

### iii. No Opposition to Settlement at this Stage

The Named Plaintiffs, Defendants, and their Counsel support the Settlement. At this preliminary stage, Plaintiffs' counsel is unaware of any opposition to the Settlement. Narvaez Decl. ¶22.

### iv. Competent Counsel's Opinion

Plaintiff's Counsel is experienced in FLSA and IMWL litigation and had a substantial amount of documentation and information to evaluate, negotiate, and make well-informed judgments about the adequacy of the Settlement. Plaintiffs' Counsel believes the Settlement is fair, reasonable, and adequate. Narvaez Decl. ¶23. The Court may place significant weight on

Plaintiffs' Counsel's endorsement of this Settlement. Plaintiffs' Counsel exercised his experience based on his knowledge of the facts of the case and the legal issues facing the Class, including analyzing the strength and weakness and value of the claims, the time and expense of protracted litigation, discovery, trial, and possible appeals. The Settlement only was reached after Defendant produced large amounts of records including pay data for members of the putative class and after engaging in several months of settlement negotiations. Narvaez Decl. ¶20. When experienced counsel supports the settlement, their opinions are entitled to considerable weight. *See In re Mexico Money Transfer Litigation*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000); *Reed v. General Motors Corp.*, 703 F.2d 170, 175 (5th Cir. 1983). However, "judges should not substitute their own judgment as to optimal settlement terms for the judgment of the litigants and their counsel." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1148-49 (8th Cir.1999) (citation omitted); *Grove v. Principal Mutual Life Ins. Co.*, 200 F.R.D. 434, 445 (S.D. Iowa 2001).

        **v.**        **The Stage of the Proceedings and Amount of Completed Discovery**

This action was resolved only after the Parties exchanged large amounts of documentation and information relevant to the class through discovery, and after the Parties engaged in extensive and lengthy settlement negotiations, which included each party conducting their own damages model and sharing that with the other. The exchange of said documentation and information has allowed Plaintiffs' counsel to fairly and fully evaluate the value of the settlement. Narvaez Decl. ¶21.

    **c.**    **Provisional Certification of the Settlement Class is Appropriate**

Class certification is appropriate partially because the Parties have reached an agreement regarding class certification as related to this Settlement. Plaintiffs request that the Court enter an order certifying the Class for settlement purposes so that Notice of the proposed Settlement can

be issued to the Settlement Class and so that Class Members will be informed of the existence and terms of the proposed Settlement, of their right to be heard on its fairness, of their right to opt out, and of the date, time and place of the formal fairness hearing. A class certification determination requires a two-step analysis. Fed. R. Civ. P. 23. The Plaintiff must show that all of Rule 23(a)'s requirements and one of Rule 23(b)'s requirements are met. *Gen. Tele. Co. of Southwest v. Falcon*, 457 U.S. 147, 161 (1982).

### i. Fed. R. Civ. P. 23(a)(1) is Satisfied

Fed. R. Civ. P. 23(a)(1) requires that the class must be "so numerous that joinder of all members is impracticable." To determine whether joinder is impracticable, the courts must consider the unique circumstances of each case. *Swanson v. Am. Consumer Indus.*, 415 F.2d 1326, 1333 (7th Cir. 1969). For example, whether class members are able to bring individual lawsuits and whether it is judicially efficient for the court to try such individual suits. *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 56 (N.D. Ill. 1996). The Seventh Circuit has held that "to require a multiplicity of suits by similarly situated small claimants would run counter to one of the prime purposes of a class action." *Swanson*, 415 at 1333. "[A] plaintiff does not need to demonstrate the exact number of class members as long as a conclusion is apparent from good-faith estimates." *Barragan v. Evanger's Dog Cat Food Co., Inc.*, 259 F.R.D. 330, 333 (N.D. Ill. 2009). Courts rely on "common sense" to determine whether an estimate of class size is reasonable and estimates "may not be based on pure speculation." *Murray v. E*Trade Fin. Corp.*, 240 F.R.D. 392, 396 (N.D. Ill. 2006). There is no threshold number requirement for a finding of numerosity. *Toney v. Rosewood Care Center of Joliet*, 1999 U.S. Dist. LEXIS 4744 at *6 (N.D. Ill. March 31, 1999)(citations omitted); *Hussein v. COINABUL, LLC*, No. 14 C 5735 (N.D. Ill. Dec. 19, 2014).

In this case, Defendants employed approximately three hundred (300) persons as

homeworkers during the Class Period who Defendants classified as independent contractors and were alleged to have been subject to Defendants' common practices. Forty or more members is generally enough to establish numerosity. *Hyderi v. Washington Mut. Bank, FA*, 235 F.R.D. 390, 396 (N.D. Ill. 2006). The Court may reasonably infer that joinder of hundreds of class members, although not impossible, is impracticable. The common core issues in this case are misclassification and wages owed to each Class Member. Repeatedly litigating those common core issues hundreds of times on an individual basis is unnecessary for the parties and the Court. If this case were to proceed through litigation, the class would seek declarative and injunctive relief, a remedy that would protect the rights of future class members for whom joinder is necessarily impracticable. *See Rosario v. Cook County*, 101 F.R.D. 659, 661 (N.D. Ill. 1983). All of the foregoing considerations support a numerosity finding.

        **ii.**        **Fed. R. Civ. P. 23(a)(2) is Satisfied**

Fed. R. Civ. P. 23(a)(2) requires questions of law and fact common to the class. "Cases have not been overly restrictive in setting out the requirements for commonality, with the existence of a common nucleus of operative fact usually being enough to qualify . . . ." *Owner-Operator Independent Drivers Assoc. v. Allied Van Lines, Inc.*, No. 04 C 3207, 2005 U.S. Dist. LEXIS 23350 at *3 (N.D. Ill. May 23, 2005) (citing *Rosario v. Livaditis*, 963 F.2d 1013, 1018 (7th Cir. 1992); *see also* 1 Newberg, *supra* at 6, § 3.10 at 23-49 (Courts generally do not require that every question of law and fact at issue in the litigation be common to all class members.). In order to meet this requirement, there needs to be only one common question of law or fact. *Arenson v. Whitehall Convalescent and Nursing Home*, 164 F.R.D. 659, 663 (N.D. Ill. 1996); *Dukes*, 2011 U.S. LEXIS 4567 at *36, 52; *see also Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2556 (2011). Factual variations among the experiences of potential class members do not

preclude the commonality requirement for class certification. *Rosario*, 963 F.2d at 1017-18.

Commonality is satisfied where the Class Members "have suffered the same injury." *Falcon*, at 153. However, the Class Members' "claims must depend upon a common contention" and "must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, at 2551. Commonality usually exists when Defendants engage in "standardized conduct toward the members of the proposed class." *Id.* However, "[n]ot all factual or legal question raised in a lawsuit need be common so long as a single issue is common to all class members." *Riordan v. Smith Barney*, 113 F.R.D. 60, 63 (N.D. Ill. 1986). And, certification can't be defeated merely because some factual grievances among the members exist.

The common nucleus of operative fact is Defendants' outsourcing of the assembly of vehicle parts to homeworkers. The common overarching legal issue is whether Defendants misclassified homeworkers as independent contractors rather than employees and if so, whether those employees were subject to the IMWL and, if so, were paid properly in accordance with the IMWL. Additional common factual issues include the common supervision over homeworkers and standardized type of training, and the enforcement of Defendants' quality standards and procedures. This common treatment of all putative class members demonstrates commonality.

### iii. Fed. R. Civ. P. 23(a)(3) is Satisfied

Fed. R. Civ. P. 23(a)(3) requires that the "claims or defenses of the representative parties are typical of the claims or defenses of the class." "Typical does not mean identical, and the typicality requirement is liberally construed." *Gaspar v. Linvatec Corp.*, 167 F.R.D. 51, 57 (N.D. Ill. 1996). Typicality ensures that the class representative's claims have the "same essential

characteristics as the claims of the class at large." *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 597 (7th Cir. 1993). "A 'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Keele*, 149 F.3d at 595 (citing *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Typicality "should be determined with reference to the company's actions," and not on "particularized defenses [the company] might have against certain class members." *Wagner v. Nutrasweet Co.*, 95 F.3d 527, 534 (7th Cir. 1996). *See also Kernats v. Comcast Corporation*, 09 C 3368 and 09 C 4305 (N.D. Ill. Oct. 20, 2010) (class certification granted for non-payment of all overtime wages under the IMWL and for non-payment of all straight time wages under the IWPCA where documented time was not compensated).

The claims of the Named Plaintiffs arise from the same alleged practice and course of conduct (Defendants' misclassification of homeworkers as independent contractors and paying them on a piece-rate basis) that gives rise to the claims of the Class Members and those claims are based on the same legal theory. The Named Plaintiffs' misclassification claim has the same essential characteristics as those of the proposed class members of other homeworkers. The Named Plaintiffs' claims are premised on the misclassification under the same policy and conduct as other proposed class members. All Class Members will claim similar injuries in that they were all not paid minimum wages or overtime wages due to Defendants' misclassification. Other common factual issues include whether Class Members were under Defendants' control when assembling vehicle parts at home, and to what extent Defendants' policies of quality and job prices were enforced against the Class Members. These similar characteristics and similar legal theories demonstrate typicality.

### iv. Fed. R. Civ. P. 23(a)(4) is Satisfied

Fed. R. Civ. P. 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Adequacy requires that the named plaintiff's claims and interests do not conflict with those of the class, that the class representatives have sufficient interest in the outcome of the case, and that class counsel are experienced and competent. *Retired Chicago Police Ass'n*, 7 F.3d at 598.

Plaintiffs' counsel is an experienced wage and hour attorney that has participated in hundreds of FLSA and IMWL actions filed in this District. Narvaez Decl. ¶5. *Schmidt v. Smith & Wollensky LLC*, 268 F.R.D. 323, 328 (N.D. Ill. 2010).

Adequacy requires that the Named Plaintiffs' claims and interests do not conflict with those of the class, that the class representatives have sufficient interest in the outcome of the case, and that class counsel are experienced and competent. *Retired Chicago Police Ass'n*, 7 F.3d at 598. The Named Plaintiffs have no antagonistic interests that go to the subject matter of the lawsuit. The Named Plaintiffs were paid in the same manner as all other Class Members. An adequate class representative need only maintain an "understanding of the basic facts underlying the claims, some general knowledge, and a willingness and ability to participate in discovery." *Wahl v. Midland Credit Management, Inc.*, 243 F.R.D. 291, 298 (N.D. Ill. 2007). This burden isn't difficult. *Murray v. New Cingular Wireless Svc., Inc.*, 232 F.R.D. 295, 30 (N.D. Ill. 2005). The Named Plaintiffs' have personal knowledge and information showing that homeworkers were all subject to similar policies governing all other homeworkers. In addition, the Named Plaintiffs have evidence such as work and assembly instructions, job price lists, and quality alerts supporting the same. Therefore, there is no indication that the Named Plaintiffs are antagonistic to the class or that they will face defenses inapplicable to other class members. Adequacy exists.

### 1. Rule 23(b)(3) is Satisfied

Fed. R. Civ. P. 23(b)(3) requires that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Plaintiff's action here meets that standard. This requirement compares the efficiency of a class action versus individual suits, and tests whether "proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The class certification requested here meets those standards. Common questions predominate under Rule 23(b)(3) if a "common nucleus of operative facts and issues" undergirds the claims of the named plaintiffs and those of the class. *Amgen Inc. v. Connecticut Ret. Plans & Trust Funds*, 133 S. Ct. 1184 (2013). Predominance is met if a plaintiff can show that "common questions represent a significant aspect of [a] case and . . . can be resolved for all members of [a] class in a single adjudication." *Messner v. Northshore University HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012). And, individualized damages determinations do not require denial of a motion for class certification. *Arreola v. Godinez*, 546 F. 3d 788, 801 (7th Cir. 2008).

For the same reasons set forth above with respect to commonality and typicality, there exist predominating common questions of fact and law, and the Class Members' claims arose from the same actions of Defendants as those of the Named Plaintiffs. A class action is superior to other methods of adjudication in this case. Judicial economy and efficiency, as well as consistency of judgments, would be achieved through the certification of the class. *See Scholes v. Stone, McGuire & Benjamin*, 143 F.R.D. 181 (N.D. Ill 1992). The alternative is potentially hundreds of individual lawsuits and piecemeal litigation. Likewise, a class action is an

appropriate method for the fair and efficient adjudication of the controversy between the Class and Defendants. In this proceeding, the Parties will be allowed to resolve the claims of approximately three hundred (300) persons in one coordinated proceeding, thus conferring significant benefits upon each class member if their claims are deemed to have merit. Defendants will also benefit by being spared the expense and potential inconsistency of scores of individual lawsuits.

### d. Proposed Notice

The Agreement provides proper Class Action Notice. Fed. R. Civ. P. 23 (e)(1) states that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Notice must ensure that the Class Members "receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811-812 (1985) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). The Parties' proposed Class Action Notice ensures that Class Members receive notice and are presented with an opportunity to be heard and participate in the litigation, either through counsel or in person. All Class members will have an opportunity to present any objections they may have.

### e. A Final Approval Hearing is Appropriate

A final fairness hearing is the final step in the Settlement approval process where the Court may hear evidence and argument necessary to fully evaluate settlement. Proponents of the settlement may explain the terms and conditions and offer argument supporting final approval. Class Members or their counsel may be heard. After the hearing, the Court will determine

whether the settlement should be approved and whether to enter a final approval order and judgment. The Parties respectfully request that the Court schedule a final fairness hearing.

Respectfully Submitted,

Dated: June 24, 2016

*[signature]*

**Valentin T. Narvaez**
Consumer Law Group, LLC
6232 N. Pulaski, Suite 200
Chicago, IL 60646
Direct: 312-878-1302
vnarvaez@yourclg.com

Plaintiffs' counsel