IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Maria Villa-Cortez, Xochitl Vargas, and Agustina Trujillo-Villegas individually and on behalf of other employees similarly situated, Plaintiffs<br>v.<br>Altak, Inc. and Miko Kabeshita, individually, Defendants | Case No. 1:15-cv-00725<br>Judge: Hon. Robert M. Dow, Jr.<br>Magistrate: Hon. Sheila Finnegan |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT AND
<u>PETITION FOR AN AWARD OF ATTORNEYS' FEES AND COSTS</u>**

**I. INTRODUCTION**

This Honorable Court granted preliminary approval of the Parties' Settlement Agreement for Class and Collective Action Claims ("Settlement Agreement") on July 6, 2016. Dkt. 59. Plaintiffs seek final approval of the Settlement Agreement because it is fair, adequate, and reasonable.

The Settlement Administrator sent *Notice of Class Action Settlement* ("Notice") to 288 Class Members. Class Members are not required to submit claim forms to receive a settlement payment. Only one Class Member filed an objection and only one Class Member sought exclusion. As provided in Joint Stipulation and Agreement to Settle Class Action Claims (Dkt. 57), the parties calculated the settlement amounts to each Class Member that will be paid from the net settlement fund, but excluded the Class Member who opted-out (Rosemary Campos) and the class member who filed an objection (Erminia Guerrero). Based on the calculation set forth in the Joint Stipulation and Agreement to Settle Class Action Claims, the lowest Settlement payment is $1.28 and the highest Settlement payment is $13,382.82. The average Settlement payment is $724.06. For the reasons as stated below, the Plaintiffs move this Honorable Court

enter an order of final approval of the Joint Stipulation and Agreement to Settle Class Action Claims.

## II. ARGUMENT

### A. Rule 23's Notice Requirements Have Been Satisfied

On July 6, 2016, the Court preliminarily approved the Settlement. Dkt. 59. On July 25, 2016, Defendants' Counsel sent the Settlement Administrator a Class list with names, last-known addresses, and last-known phone numbers of Class Members. Ex. 1, Patton Decl., ¶ 2. The list identified 288 individuals. *Id.* On August 16, 2016, the Court issued an order amending certain dates and required the Settlement Administrator to send the Notice by August 12, 2016. Dkt. 64. On August 26, 2016, the Settlement Administrator caused Notice to be printed and mailed to the 288 names and mailing addresses in the Class List. *Id.* at ¶ 3. A true and correct copy of the Notice mailed to Class Members is attached as Exhibit A to the Patton Declaration. *Id., Ex. A*. Since mailing Notice to the Class Members, the Settlement Administrator received forty-seven notices returned as undeliverable. *Id.* at ¶ 4. The Settlement Administrator sent Notice after verifying the most recent mailing address for the Plaintiffs by using Accurint, the National Change of Address (NCOA) Database. Class Members were afforded until September 30, 2016 to file an exclusion, to file an objection, or to otherwise comment on the Settlement. *Id.* at ¶¶ 5-6. To date, only one Class Member objected and only one Class Member sought exclusion. *Id.*

The Settlement Administrator mistakenly sent Notice on August 26, 2016 rather than August 12, 2016. The delay in sending the Notice did not alter any of the substantive dates notifying class members of the deadlines to opt-out or exclusion or the date of the Final Approval Hearing. Additionally, the delay did not impact information about the settlement provided in the Notice. The short delay in sending the Notice should not impact whether the

Court should grant this Motion. Rule 23 does not specify any time of notification, but "in some cases . . . [i]mportant considerations include whether one party may be harmed by the notice, and whether the class will be harmed by a delay." *Tylka v. Gerber Products Co.*, 182 F.R.D. 573, 579 (N.D. Ill. 1998). In making the decision regarding the time for notification, it is essential that class members are given "an opportunity to present their objections" and "a reasonable time . . . to make their appearance." *Id.* (*quoting Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314 (1950)). "In all events, deciding whether and when to insist on details, and how many details, are matters for the sound discretion of district judges who have so much first-hand experience managing class actions." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 664 (7th Cir. 2015). The Court possesses "broad discretion in fashioning the notice program in each particular case," *Mangone v. First USA Bank,* 206 F.R.D. 222, 232 (S.D. Ill. 2001), "subject only to the broad 'reasonableness' standards imposed by due process." *Simer v. Rios,* 661 F.2d 655, 686 (7th Cir. 1981). Despite the Settlement Administrator's short delay in sending the Notice, Class Members still had sufficient time of approximately thirty-six days to file an exclusion, to file an objection, or to otherwise comment on the Settlement. The Settlement Administrator's delay did not deny any Class Member an opportunity to present an objection or a reasonable time to make an appearance. Therefore, the short delay in sending the Notice should not prevent the Court from granting this Motion.

Rule 23(c)(2)(B) requires that Class Members have the "best notice practicable", including "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974). Notice by mail affords "individual notice to all members" in accordance with Rule 23(c)(2). *Id.* Where the names and addresses of class members are easily ascertainable, individual notice by mail is "clearly the 'best notice

practicable." *Id*. at 175. The Notice to Class Members, as described above, meets the requirements of Rule 23(c)(2)(B).

### B. Final Approval is Appropriate

Federal courts favor class action litigation settlement. *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996). "Although such settlements must be approved by the district court, its inquiry is limited to the consideration of whether the proposed settlement is lawful, fair, reasonable, and adequate." *Id.* (*quoting E.E.O.C. v. Hiram Walker & Sons, Inc.,* 768 F.2d 884, 889 (7th Cir.1985)). The Seventh Circuit considers the "Armstrong factors" in reviewing the fairness of proposed class action settlements. These factors include a comparison of the strength of plaintiffs' case versus the amount of the settlement offer, the likely complexity, length, and expense of the litigation, the amount of opposition to the settlement among affected parties, the opinion of competent counsel, and the stage of the proceedings and the amount of discovery already undertaken at the time of the settlement. *Id.* at 1199. A "district court should be chary of disapproving" class action litigation settlement. *E.E.O.C.*, 768 F.2d at 890. When evaluating the fairness of settlement, the Court focuses on the settlement's components in their entirety and considers the facts "in the light most favorable to the settlement." *Armstrong v. Board of School Directors, Etc.*, 616 F.2d 305, 315 (7th Cir.1980).

#### 1. The strength of plaintiffs' case versus the amount of the settlement offer

The first factor is the most important consideration. *Isby*, 75 F.3d at 1199. "In conducting this analysis, the district court should 'quantify the net expected value of continued litigation to the class.' To do so, the court should estimate 'the range of possible outcomes and ascrib[e] a probability to each point on the range.'" *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284-85 (7th Cir. 2002). Although precision in valuing a case cannot be expected, the court should

require evidence that allows estimates of possible outcomes, so that the court can derive a "ballpark valuation." *Id*. Therefore, a court must weigh the amount of the settlement offer against the total amount that the class could recover, discounted by the weakness of plaintiffs' case.

The Settlement is an excellent result for the Class. Plaintiffs allege that they were misclassified as independent contractors. The possible success of Plaintiffs' claim was not certain, especially in light of the fact that the Illinois Department of Employment Security had previously deemed Plaintiffs independent contractors. Additionally, of the factors that are balanced when determining whether a person is an employee both parties had strong arguments. Moreover, the Settlement provides much more than "a fraction of the potential recovery." By Plaintiffs' Counsel's estimation, the Settlement provides for 60% of the maximum wage loss suffered by Class Members. Ex 2, Narvaez Decl., ¶ 9. The lowest Settlement payment is $1.28[1], the average Settlement payment is $724.06, and the largest Settlement payment is $13,382.82. This factor weighs heavily in favor of the Settlement's final approval.

### 2. The likely complexity, length, and expense of the litigation

Continued litigation erodes the present value of any relief awarded to the class. "To most people, a dollar today is worth a great deal more than a dollar ten years from now. It is especially likely to be worth more to the members of the class in this litigation. Only a person with a very high discount rate (that is, a strong preference for present over future dollars—a preference that may reflect desperation rather than fecklessness or shortsightedness) would borrow at an astronomical interest rate in order to get a sum of money now rather than a few weeks from now." *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 284 (7th Cir. 2002). Defendants would

---

[1] The lowest Settlement Payment of $1.28 is based on the imputed hours that the Class Member worked (approximately 1.02 imputed hours) multiplied by the difference between the imputed hourly rate and the Illinois minimum wage rate and includes discounted liquidated damages.

aggressively defend the case if litigation continued. Further litigation would require significant fact discovery (including electronic and expert discovery), depositions, and briefing motions for class certification and possible motions for summary judgment. Plaintiffs could face the possibility of appeals. The burden, risks, and expenses to both sides would be substantial. The Settlement, on the other hand, preserves the present value of relief to the class. This factor weighs heavily in favor of the Settlement's final approval.

### 3. The amount of opposition to the settlement among affected parties

A small number of objections by class members is a significant factor in determining whether the proposed class settlement is reasonable to the class as a whole. *See Hispanics United of DuPage County v. Village of Addison, Illinois*, 988 F.Supp. 1130, 1169 (N.D. Ill. 1997) (finding fairness over a small number of objections). In this case, only one Class Member objected (without explaining the basis of her objection) and only one Class Member sought exclusion. Ex. 1, Patton Decl., ¶¶ 5-6; Dkts. 65 and 66. The Court may approve a fair settlement over objections by some or even many class members, and despite criticism by some named plaintiffs. *Armstrong v. Board of School Directors,* 471 F.Supp. 800, 804 (E.D. Wis. 1979), *aff'd*, 616 F.2d 305 (7th Cir. 1980). This factor weighs heavily in favor of the Settlement's final approval.

### 4. The opinion of competent counsel

Class Counsel had the opportunity to review and analyze a substantial amount of information to evaluate the merits of the lawsuit and the Settlement's value. The Settlement was reached after lengthy and extensive negotiations. In Class Counsel's opinion, the Settlement is fair, reasonable and adequate. Ex. 2, Narvaez Decl., ¶ 10. The Court may place significant weight on the strong endorsement of this Settlement by Class Counsel. *See In re Mexico Money*

*Transfer Litig.*, 164 F.Supp. 2d at 1020. This factor weighs heavily in favor of the Settlement's final approval.

### 5. The stage of the proceedings and the amount of discovery already undertaken at the time of the settlement

The Parties exchanged a substantial amount of records that allowed counsel to evaluate the case's merits, potential damages, and the probable course of future litigation. The parties produced and exchanged sufficient information over at least a six-month period of time to allow the parties to make an informed decision about settlement. *See In re AT & T Mobility Wireless Data Services Sales Tax Litigation*, 789 F.Supp. 2d 935, 966 (N.D. Ill. 2011) (approving settlement while noting that "[a]lthough no formal discovery has taken place in this MDL litigation prior to the parties' entering into the Settlement Agreement, the parties have nevertheless engaged in considerable, extensive informal discovery."). This factor weighs heavily in favor of the Settlement's final approval. All *Armstrong* factors favor the Settlement's final approval. The Settlement is fair, reasonable, and adequate. Therefore, the Court should grant this Motion and final approval of the Settlement.

### C. The Service Award for each Class Representative is Justified

The Seventh Circuit stated that "[b]ecause a named plaintiff is an essential ingredient of any class action, an incentive award is appropriate if it is necessary to induce an individual to participate in the suit." *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). "Incentive awards 'are justified when necessary to induce individuals to become named representatives.'" *Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 503 (Nov. 23, 2015)(citing *In re Synthroid Marketing Litigation*, 264 F.3d 712, 722 (7th Cir. 2001). "When determining whether and how much to award as an incentive for a named plaintiff, courts are instructed to consider 'actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from

those actions, and the amount of time and effort the plaintiff expended in pursuing the litigation.'" *Id.* (citing *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)).

Class Counsel seeks a Service Award for each Class Representative, Maria Villa-Cortez, Xochitl Vargas, and Agustina Trujillo-Villegas, in the amount of $10,000.00 each. The Class Representatives made substantial contributions to this case's outcome. Ex 2, Narvaez Decl., ¶ 11. Without each the Class Representatives' efforts, the Settlement would not have been achieved to the benefit of absent Class Members. *Id.* Therefore, the Service Awards are justified. *Id.*

### D. Class Counsel's Request for Attorneys' Fees and Costs is Reasonable

#### 1. The Court Should Utilize the Percentage Method

The common fund doctrine is an exception to the general rule that requires litigants to bear their own attorney's fees. *Pactiv Corporation v. Sanchez*, 13 C 8182 (N.D. Ill. July 23, 2015) (*citing Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980)). Under the common fund doctrine, a lawyer responsible for creating a common fund that benefits a group of litigants is entitled to a fee from the fund. The authority to award fees from a common fund is founded in the "historic equity jurisdiction of the federal courts." *Sprague v. Ticonic Nat. Bank*, 307 U.S. 161, 164 (1939); *see also Central Railroad & Banking Co. v. Pettus*, 113 U.S. 116, 124 (1885) (allowing payment from a common fund of "all expenses properly incurred in the preparation and conduct of the suit, including . . . reasonable attorney's fees"). "[A] lawyer who recovers a common fund for the benefit of a person other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).

Two methods predominate the calculation of reasonable attorneys' fees in our district: the lodestar method and the percentage method. *In re Dairy Farmers of America, Inc.*, 80 F.Supp.3d

838, 844 (N.D. Ill. Feb. 20, 2015). The percentage of the fund method has "emerged as the favored method for calculating fees in common fund cases in this district . . . ." *Id*. "[T]he decision whether to use a percentage method or a lodestar method remains in the discretion of the district court." *Id.* (citing *Stumpf v. Pyod, LLC*, 2013 WL 5753829, at *3 (N.D. Ill. Oct. 23, 2013)). But, the Seventh Circuit has stated that "there are advantages to utilizing the percentage method in common fund cases because of its relative simplicity of administration." *Florin v. Nationsbank of Georgia, N.A.*, 34 F.3d 560, 566 (7th Cir. 1994).

"The ratio that is relevant to assessing the reasonableness of the attorneys' fee . . . is the ratio of (1) the fee to (2) the fee plus what the class members received." *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014). The Seventh Circuit recognized that the "usual range for contingent fees is between 33 and 50 percent," *In re Dairy Farmers*, 80 F.Supp.3d at 845. In this matter, Class Counsel's proposed attorneys' fee ($109,000.00) rests at the low end of the *Redman* ratio: less than one-third of the Settlement Fund ($363,000.00). The monetary Settlement value for each Class Member is also excellent. The Settlement provides for 60% of the maximum wage loss suffered by Class Members. Ex 2, Narvaez Decl., ¶ 9. The lowest Settlement payment is $1.28, the average Settlement payment is $724.06, and the largest Settlement payment is $13,382.82. Ex 1, Patton Decl., ¶ 7. Class Members, except the Named Plaintiffs, will not be required to provide a general release in order to participate in the Settlement. And, this settlement is a successful result because a significant monetary recovery is available to Class Members without the uncertainty of appeal and will be delivered to them through this Settlement. "Courts must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir. 2001).

When the "prevailing" method of compensating lawyers for "similar services" is the contingent fee, then the contingent fee *is* the "market rate." *Kirchoff v. Flynn,* 786 F.2d 320, 324 (7th Cir. 1986). "At the same time as it automatically aligns interests of lawyer and client, rewards exceptional success, and penalizes failure, the contingent fee automatically handles compensation for the uncertainty of litigation." *Id.* at 326. Also, the "contingent fee uses private incentives . . . to align the interests of lawyer and client. The lawyer gains only to the extent his client gains." *Id.* at 325.

Class Counsel requests attorneys' fees and costs in the amount of $109,000. Class Counsel took this case on a contingent fee basis. Ex 2, Narvaez Decl., ¶ 12. Therefore, Class Counsel "could have lost everything." *Matter of Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 570 (7th Cir. 1992). The Seventh Circuit has "recognized that there is generally some degree of risk that attorneys will receive no fee (or at least not the fee that reflects their efforts) when representing a class because their fee is linked to the success of the suit." *Sutton v. Bernard*, 504 F.3d 688, 694 (7th Cir. 2007). These facts support Class Counsel's fee request.

### 2. The Payment of Class Counsel's Costs and the Settlement Administrator's Fees in Administering the Settlement Are Appropriate

The Settlement provides that Class Counsel may apply to the Court for payment of litigation costs and expenses, up to $3,500.00, and for payment of the Settlement Administrator's fee (not to exceed $15,000.00). Class Counsel requests costs and expenses in the amount of $680.00. Class Counsel's request of payment of costs and expenses in the amount of $680.00 is appropriate, as these costs and expenses were necessary to litigate and settle this case. Ex 2, Narvaez Decl., ¶ 15. Class Counsel requests $13,850.00 for the Settlement Administrator's total cost of administering the settlement. This amount includes costs to date as well as through the

completion of this matter. Ex. 1, Patton Decl., ¶ 8. The reimbursement of costs and expenses from the Settlement Fund is appropriate.

## III. CONCLUSION

The Settlement considers the substantive issues and risks faced by the parties. The Settlement resulted from arm's-length negotiations in good faith, and The Settlement is not the product of fraud or collusion. All the criteria under Rule 23 are met for purposes of settlement, and the Parties provided the Class with adequate notice of the terms and conditions of the Settlement. Only one Class Member objected, and only one Class Member requested exclusion. All Armstrong factors weigh heavily in favor of the Settlement's final approval. Class Counsel believe that the Settlement is fair, reasonable, and adequate and in the best interest of the Class Members. Therefore, this Honorable Court should grant final approval of the Settlement and enter the Parties' proposed final approval order.

Respectfully submitted on Friday, October 07, 2016.

**Valentin T. Narvaez**
Plaintiffs' counsel
vnarvaez@yourclg.com

**Raisa Alicea**
Plaintiffs' Counsel
ralicea@yourclg.com

Consumer Law Group, LLC
6232 N. Pulaski, Suite 200
Chicago, IL 60646
Phone: 312-878-1302